# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**JENNIFER RENELL PEARSON**

**CIVIL ACTION**

**VERSUS**

**NO. 13-131-BAJ-RLB**

**CAROLYN W. COLVIN, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION**

## NOTICE

Please take note that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court for the Middle District of Louisiana.

Under 28 U.S.C. § 636(b)(1), you have **14 days** from receipt of this Notice to file written objections to the proposed findings of fact and conclusions of law in the Magistrate Judge's Report. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on August 18, 2014.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JENNIFER RENELL PEARSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-131-BAJ-RLB** |
| **CAROLYN W. COLVIN, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION** | |

---

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

---

Plaintiff, Jennifer Renell Pearson (Plaintiff), seeks judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) pursuant to 42 U.S.C. § 405(g) denying Plaintiff's application for a period of disability and disability insurance, and for supplemental security income benefits. (R. Doc. 1). Plaintiff alleged that she became disabled on January 31, 2009, based on the following impairments: type 2 diabetes, osteoarthritis, hypertension, depression, and nerve damage. (Tr. 115, 29).[1] Having found all of the procedural prerequisites met (Tr. 1-3), the Court has properly reviewed Plaintiff's appeal. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you . . . file an action in Federal district court . . . ."). For the reasons given below, the Court **RECOMMENDS** that the decision of the Commissioner be **VACATED** and Plaintiff's appeal be **REMANDED** for further proceedings consistent with this opinion.

---

[1] References to documents filed in this case are designated by: (R. Doc. [docket entry number(s)] at [page number(s)]). Reference to the record of administrative proceedings filed in this case is designated by: (Tr. [page number(s)]).

## II.  STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (defining "substantial evidence" in the context of the National Labor Relations Act, 29 U.S.C. § 160(e)).  The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quotations omitted).  Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *See, e.g.*, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) ("we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's"); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). If the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

## III.    ALJ'S DETERMINATION

In determining disability, the Commissioner (through an ALJ) works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability. If the claimant is successful in sustaining his or her burden at each of the first four steps, the burden shifts to the Commissioner at step five. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (explaining the five-step process). First, the claimant must prove he is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c). At step three the ALJ must conclude the claimant is disabled if he proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app. 1 (Listing of Impairments). Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his or her past relevant work. 20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he or she is capable of performing other work. 20 C.F.R §

404.1520(g)(1).  If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

Here, after reviewing the evidence contained in the administrative record (Tr. 60-62), the ALJ made the following determinations:

1.  Plaintiff met the insured status requirements of the Social Security Act through December 31, 2014.

2.  Plaintiff has not engaged in substantial gainful activity since January 31, 2009, the alleged onset date.

3.  Plaintiff has the following severe impairments: bilateral carpal tunnel syndrome, diabetic peripheral neuropathy of the bilateral lower extremities and hands, osteoarthritis of the right knee, insulin dependent diabetes mellitus, obesity, and hypertension.

4.  Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listing — specifically, Listing 11.14 (Peripheral Neuropathy).

5.  Plaintiff has the residual functional capacity (RFC) to perform a full range of light work.[2]

6.  Plaintiff is unable to perform any past relevant work, including her past relevant work as a nurse's assistant and a secretary.

7.  Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform based on the Medical Vocational Guidelines.

---

[2] The Social Security Administration explains that light work:

> [I]nvolves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

(Tr. 52-59).

## IV.     DISCUSSION

Plaintiff argues that the ALJ overlooked record evidence of non-exertional limitations

resulting from major depressive disorder.  Substantial evidence, therefore, does not support the

ALJ's determination that Plaintiff's major depression was neither severe at step 2, nor impacted

Plaintiff's RFC to perform the full range of light work. (R. Doc. 13 at 7-8).  Because record

evidence supports her alleged non-exertional impairments, the ALJ also erred in applying the

Medical Vocational Guidelines (Grids) at step five. (R. Doc. 13 at 6).  Defendant responds that

the ALJ's step 2 decision was supported by substantial evidence and, because the record does not

corroborate any of the non-exertional limitations alleged, the decisions made at steps 3, 4, and 5

of the evaluation are likewise supported by substantial evidence.  While Plaintiff raises

additional argument, the Court does not address them as the ALJ's error at step 2 impacted the

remainder of the evaluation and warrants remand.

At step 2 of the sequential evaluation process the Commissioner must determine whether

the claimant's "impairment or combination of impairments" is severe.  According to the

regulations, if the claimant does "not have any impairment or combination of impairments which

significantly limits" his or her "physical or mental ability to do basic work activities,"[3] the

---

[3] Basic work activities include:

    (1)      Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
    (2)      Capacities for seeing, hearing, and speaking;
    (3)      Understanding, carrying out, and remembering simple instructions;
    (4)      Use of judgment;
    (5)      Responding appropriately to supervision, co-workers and usual work situations; and
    (6)      Dealing with changes in a routine work setting.

20 C.F.R. § 416.921(b)(1)-(6).

Commissioner "will find" the claimant does "not have a severe impairment and [is], therefore, not disabled." 20 C.F.R. §§ 404.1520(c), 416.920(c).

Despite the regulation's more stringent language, the Fifth Circuit and others have clarified: "An impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985); *see also Anthony v. Sullivan*, 954 F.2d 289, 293 n.5 (5th Cir. 1992) (step 2 only requires a "*de minimis* showing"); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("the severity requirement may still be employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint"). "[B]ecause step two is to be rarely utilized as basis for the denial of benefits, its invocation is certain to raise a judicial eyebrow." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 361 (3d Cir. 2004) (citing SSR 85–28, 1995 WL 56856, at *4 (Jan. 1, 1985) ("Great care should be exercised in applying the not severe impairment concept.")).

When evaluating a mental impairment at step 2, a finding of non-severe is only warranted where a claimant's limitations in activities of daily living; social functioning; or concentration, persistence or pace, are mild to none. 20 C.F.R. § 404.1520a(d)(1). The degree of functional limitation imposed by the claimant's mental impairment is "based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis . . . . consider[ing] such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function." 20 C.F.R. § 404.1520a(c)(1). While the ALJ referenced this regulation and the appropriate areas of functional limitations, the

decision at step 2 ignores a substantial amount of record evidence probative to Plaintiff, and incorrectly summarizes much of the evidence actually mentioned.

The ALJ first considered Plaintiff's activities of daily living and found that they were mildly limited. (Tr. 53). Citing Plaintiff's Functional Report (Tr. 172-79), the ALJ states that Plaintiff claimed:

> [S]he is able to care for herself and her two-year old child every day. She is able to perform household chores and pick up around the house including sweeping and washing laundry. She is able to prepare simple meals each day. She is able to take her medication without reminders. She is able to drive and gets around several times per week. She shops in stores twice a week . . . .

(Tr. 53). This, however, does not accurately describe the record evidence of Plaintiff's daily activities.

The ALJ was required to, but nonetheless ignored, evidence of Plaintiff's ability to function independently, the amount of assistance she needs, and the settings in which she is able to function. *See* 20 C.F.R. § 404.1520a(c)(1). According to the record, Plaintiff lives with her aunt (10-11) who often helps with her son as Plaintiff "has good days and bad days." (173). In addition to her aunt, Plaintiff regularly relies on her sister for help with her son and daily support. (Tr. 15, 19, 23, 174). For example, Plaintiff testified that her sister "helps [her] out a lot" with her child and that her aunt often has to change his diapers, feed, and bathe him. (Tr. 15); (Tr. 16) ("Q: Do you take [your son] outside just to get fresh air? A: No, I can't, I can't go outside too much. But my aunt will take him out, I don't really like going out much."); (Tr. 23) ("Q: Now, I take it your aunt and your sister takes care of your son quite a bit for you? A: Yes."). While Plaintiff testified that she does sweep and do laundry, the ALJ does not mention that she does as "much as she can tolerate," that Plaintiff stated she needs help or encouragement to do these and other activities, or that she is living in her aunt's house. (Tr. 174).

Plaintiff also did not claim that she prepares meals on a daily basis. (Tr. 53). Instead, she testified that she makes "sandwiches, cereal, [or] frozen meals" about every other day. (Tr. 174). Plaintiff likewise did not testify that she "is able to take her medication without reminders." (Tr. 53). In her Functional Report, Plaintiff explains that she does need reminders taking medications — "My sister will call and ask me." (Tr. 174). Plaintiff also testified that while she has a valid driver's license, she no longer drives and only goes out of the house when accompanied by her sister, who usually has to encourage her to leave home. (Tr. 175-76). Plaintiff does attend doctor's appointments, but relies on "[m]edical transportation or [her] aunt" to get to appointments. (Tr. 15).

The ALJ also found Plaintiff was only mildly limited in the area of social functioning as she "regularly socialized with others." (Tr. 53). However, Plaintiff consistently reported that the majority of her personal interactions are with her sister and aunt; she does not really have friends. (Tr. 18-19). According to Plaintiff, her sister tries to make her leave the house as often as possible, but Plaintiff is not interested in social interaction. (Tr. 308) ("Client reported that she lets her son go with her sister on fun outings but she doesn't go with them stating 'I don't want to hold him back because of my problems.'"). Plaintiff consistently represented, both during the hearing and to her physicians, that she suffers from frequent crying spells, spends most days isolated in her room, and avoids large crowds. (Tr. 15-16, 19, 23, 307, 308, 310). Plaintiff even reported that she stopped attending her church because the crowd was more than she could handle. (Tr. 308). There is also evidence that Plaintiff experiences mood swings and gets irritated easily. (Tr. 23-24, 307, 314); (Tr. 308) ("Client reports physical fights with her boyfriend and her younger sister. Client reports that she gets violent because 'something just

triggers me. They're talking about me or they don't believe me, or we will just be talking and they say the wrong thing.").

The record also supports a history of passive suicidal ideation accompanied by diagnoses of "Major Depressive Disorder, recurrent, severe, with psychotic features," including visual and auditory hallucinations, and "Post Traumatic Stress Disorder," and a GAF of 55. (Tr. 14, 23, 295, 297, 307, 309); (Tr. 300) ("Symptoms have included crying, low mood, poor sleep, forgetfulness, distractibility, hopelessness/helplessness/worthlessness/emptiness, passive SI but no plan, feeling easily angered, anxiety attacks with shortness of breath, and chest pain and shaking, feeling like sister and other are against her."); (Tr. 311) (patient reports "wishing I was dead").

According to the American Psychiatric Association, a GAF of 55, like Plaintiff's, is consistent with "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders* 34 (Michael B. First, M.D., et al. eds., 4th ed. 2000). Consistent with this finding, Plaintiff's treatment records describe her affect as either "flat," "congruent" or "dysphoric." (Tr. 257, 295, 297, 300, 306, 311).

Finally, the ALJ found Plaintiff to be only mildly limited in her ability to maintain concentration, persistence, and pace. (Tr. 53). The ALJ goes on to explain the reasons for this determination: "She has difficulty sitting or standing for extended periods and must frequently change positions. She has alleged difficulty lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, climbing stairs, remembering, and using her hands." (Tr. 53). Aside

from "remembering," these limitations are attributable to Plaintiff's physical, not mental, impairments and are largely irrelevant to this functional area. (Tr. 53).

The Court finds the ALJ's step 2 determination is not supported by substantial evidence considering the record evidence and the de minimis burden at step two. Although the ALJ continued the evaluation until step 5, largely discussing Plaintiff's physical impairments, a remand to the agency is appropriate because the ALJ's error at step 2 adversely impacted the ultimate issue of disability at step 5.[4]

At step five of the sequential evaluation process, the ALJ found, based on Plaintiff's exertional limitations, that the Medical Vocational Guidelines directed a finding of not disabled. However, considering the record as a whole, it cannot be said that the ALJ's reliance solely on the Medical Vocational Guidelines was a correct application of the proper legal standards. "Use of the 'Grid Rules' is appropriate when it is established that a claimant suffers only from exertional impairments, or that the claimant's nonexertional impairments do not significantly affect his residual functional capacity." *Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999) ("Because we conclude that the Commissioner's findings with respect to Crowley's [non-exertional impairments] are unsupported by substantial evidence, we likewise must conclude that exclusive reliance on the "Grid Rules" was in error."). Moreover, the Secretary bears the burden

---

[4] In addition to the ALJ's errors at steps 2 and 5, the ALJ likewise failed to properly consider the effect Plaintiff's mental impairment had on her residual functional capacity to engage in substantial gainful activity. While assessing Plaintiff's RFC, the ALJ ignores or erroneously cites the same evidence mentioned above at step 2. (Tr. 57). The ALJ additionally claimed that "more recent evidence from 2011 has shown *significant* improvement since starting Lexapro." (Tr. 57) (emphasis added). However, there is nothing in the record to corroborate "significant" improvement in Plaintiff's depression as a result of starting Lexapro in 2011. Plaintiff's October 28, 2010 medical records from the Center for Adult Behavioral Health indicate that she was prescribed Lexapro and Ativan in the past, but they "did not alleviate" her symptoms. (Tr. 305). Plaintiff's most recent medical evidence is from Baton Rouge Mental Health and dated May 2, 2011. (Tr. 257). Those records report that Plaintiff continued to experience passive suicidal ideation, irritability, worthlessness, and anxiousness. (Tr. 257). Her affect was "still dysphoric" and "a bit cynical." (Tr. 257). It was at this May 2, 2011 appointment that Plaintiff was prescribed a "trial of Lexapro 10 mg (for irritability, 'nerves')." (Tr. 256). The only evidence post-dating Plaintiff's May 2, 2011 records is Plaintiff's August 10, 2011 hearing testimony that she saw "a little" improvement after starting Lexapro. (Tr. 15). This is not sufficient to support the ALJ's finding of "significant" improvement of Plaintiff's depression in 2011. (Tr. 57).

at the fifth step of establishing that the claimant is capable of performing work in the national economy. *See Leggett v. Chater*, 67 F.3d 558, 565 n.11 (5th Cir. 1995).

The Court has already determined that the ALJ's step 2 finding that Plaintiff's mental impairment was non-severe was not supported by substantial evidence. As such, "if it should be determined on remand that [Plaintiff's] non-exertional mental impairments during the period of disability were not merely a slight abnormality of minimal effect on ability to work, the ALJ's reliance on the Grid Rules at the fifth level also constitutes error and must be reconsidered." *Loza v. Apfel*, 219 F.3d 378, 399 (5th Cir. 2000) (substantial evidence did not support step 2 finding that claimant's mental impairment was not severe, therefore, record evidence of non-exertional impairment required testimony of vocational expert and precluded use of Grids); *see also Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000) ("If . . . the claimant suffers from nonexertional impairments or a combination of exertional and nonexertional impairments, then the Commissioner must rely on a vocational expert to establish that such jobs exist in the economy."); *Milligan v. Colvin*, at *5 (N.D. Tex. Sept. 24, 2013) ("[T]he ALJ committed error by not relying upon a vocational expert. Specifically, the ALJ's decision finding plaintiff's several nonexertional impairments were severe at Step Two was internally inconsistent with his later decision that the impairments did not significantly affect plaintiff's RFC at Step Five. Either plaintiff's nonexertional impairments do significantly limit her (as determined in Step Two), or they do not significantly limit her (as determined in Step Five)."); *Robinson v. Barnhart*, 248 F. Supp. 2d 607, 623 (S.D. Tex. 2003) (remand warranted where "[d]espite the plethora of evidence from multiple sources and [the ALJ's] own finding that Robinson had mental impairments, the ALJ did not incorporate her mental limitations in his assessment of her RFC"); *Singletary v. Bowen*, 798 F.2d 818, 822 (5th Cir. 1986) (explaining in the context of mental illness: "A finding

that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can hold whatever job he finds for a significant period of time.").

Therefore, a remand will be required to reassess Plaintiff's depression at all steps of the sequential evaluation process as the record does support the existence of non-exertional limitations that were not included in the RFC and would prevent use of the Medical Vocational Guidelines at step five. *See Scott v. Heckler*, 30 F.3d 33, 35 (5th Cir. 1994) (Remand was warranted where record tended to support, but the RFC did not include, non-exertional limitations "that can limit the range of jobs [the] claimant can perform. In such cases, the ALJ must rely on expert vocational testimony to establish that jobs exist."); *Xue Vang v. Astrue*, 2012 WL 1082205, at *6 (E.D. Ca. March 29, 2012) (Because "plaintiff's PTSD and depression are more than slight abnormalities and pass the de minimis screening at step two . . . a remand . . . is appropriate because the ALJ will be required reassess plaintiff's PTSD and plaintiff's depression past step two of the analysis, including reformulation of plaintiff's RFC to include a mental component.").

Plaintiff further contends that the ALJ erred at step 3 by not considering whether her mental impairment met or equaled Listing 12.04C, as indicated by the mental source statement of her alleged treating physician. Plaintiff also contends that her physical impairments meet or equal Listing 11.04 and that her RFC should have included a sit/stand option, in addition to her mental non-exertional limitations. The Court does not reach Plaintiff's additional assignments of error, however, because the error at step two infected the remaining steps in the sequential evaluation process and the ALJ will be required to reconsider the combined effect that all of

Plaintiff's impairments, both physical and mental, have on her ability to perform substantial gainful activity. The ALJ should reconsider Plaintiff's remaining allegations of error on remand. *See Trivett v. Astrue*, 2011 WL 3841566, at *4 (M.D. Fla. Aug. 29, 2011) ("[B]ecause the Court reverses and remands on this first issue [at step 2], it need not address [claimant's] other arguments.").

## V.     RECOMMENDATION

For the reasons given above, the Court **RECOMMENDS** that the Commissioner's decision be **VACATED** and Plaintiff's appeal be **REMANDED** for further proceedings consistent with this opinion.

Signed in Baton Rouge, Louisiana, on August 18, 2014.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**